IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-179-F

J&J SPORTS PRODUCTIONS, INC.,       )
                                    )
                                    )
                                    )
            Plaintiff,              )
                                    )
                                    )       **ORDER**
        v.                          )
                                    )
WEST SIDE STORIES and WARRICK F.    )
SCOTT,                              )
                                    )
            Defendants.             )

This matter is before the court on the Motions to Dismiss [DE-15; DE-20] filed by Defendants Warrick F. Scott and West Side Stories, respectively. Plaintiff J & J Sports Production has filed its responses to the motion, and the time for filing replies has passed. The motions are therefore ripe for ruling.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff initiated this action on April 30, 2010, by filing a complaint in this court alleging claims for violations of 47 U.S.C. §§ 553 and 605 of the Federal Communications Act of 1934, as amended ("FCA"). The Complaint named West Side Stories and "Scott F. Warrick" as defendants. Compl. [DE-1].

The Complaint alleges Plaintiff was granted the right to distribute the Oscar de la Hoya v. Floyd Merriweather, Jr. WBC Lightweight Championship Fight Program telecast nationwide on May 5, 2007 ("the Program") via closed circuit television and via encrypted satellite signal. Compl. ¶ 8. Pursuant to its contract to distribute the Program, Plaintiff entered into sublicensing agreements with

various entities in North Carolina allowing them to publicly exhibit the Program to the entities' patrons. *Id.* ¶ 9.

Plaintiff allege that Defendants, without authorization of Plaintiff, unlawfully intercepted received and/or descrambled the satellite signal that transmitted the Program and exhibited the Program for commercial advantage or financial gain. *Id.* ¶ 11. Plaintiff allege, upon information and belief, that Defendants used an illegal satellite receiver to intercept Plaintiff's signal and/or used an illegal cable converter box or device to intercept the Program. *Id.* ¶ 12. Plaintiff also allege that Defendants modified a device or equipment, knowing or having reason to know that the device or equipment is primarily used for assistance in the unauthorized decryption of satellite cable programming or other prohibited activity. *Id.* at ¶ 19. Finally, Plaintiff allege that Defendants illegally intercepted the Program when it was distributed to and shown by cable television systems. *Id.* at ¶ 28.

On May 3, 2010, the Clerk of Court issued summonses to Plaintiff. On May 25, 2010, Plaintiff filed copies of the summonses, which were returned unexecuted. *See* Notices [DE-5; DE-6]. On September 17, 2010, the Clerk of Court issued a Notice to Plaintiff of Failure to Make Service Within 120 Days [DE-7]. In response to the Notice, on September 23, 2010, Plaintiff filed a Motion to Extend Time to Complete Service of Summons and Complaint [DE-8]. In an Order filed September 24, 2010, the undersigned allowed Plaintiff's motion, allowing Plaintiff an additional 120 days to effect service.

On October 27, 2010, Plaintiff requested that summons be reissued as to "Scott F. Warrick." *See* Notice [DE-10]. The Clerk reissued the summons that same day. On November 18, 2010, Plaintiff filed proof of service [DE-12] as to "Scott F. Warrick," showing that he was served on

2

Case 5:10-cv-00179-F Document 39 Filed 07/18/11 Page 2 of 15

November 13, 2010.

On December 2, 2010, Plaintiff filed an Amended Complaint [DE-13]. The only difference between the Complaint and the Amended Complaint is that Warrick F. Scott is named as a defendant, as opposed to "Scott F. Warrick." On December 17, 2010, Plaintiff filed an Acceptance of Service [DE-14] executed by counsel for both Defendants, dated December 8, 2010.

On January 11, 2010, Defendant Warrick F. Scott filed his Motion to Dismiss [DE-15], arguing that Plaintiff's claims are barred by the statute of limitations. On January 27, 2010, Defendant West Side Stories filed its own Motion to Dismiss [DE-20], which is nearly identical to the motion filed by Warrick F. Scott. After receiving an extension of time, Plaintiff timely filed its responses to the motions to dismiss.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the " '[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.' " *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover,

a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

Dismissal in response to a Rule 12(b)(6) motion is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). *See generally* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate).

### III. ANALYSIS

As stated, Plaintiff seeks relief under 47 U.S.C. §§ 553 (unauthorized reception of cable service) and 605 (unauthorized publication or use of communications), otherwise known as the piracy statutes of the FCA. Specifically, Plaintiff alleges in Count I that Defendants unlawfully intercepted, received and/or descrambled satellite signals used to transmit the broadcast of the Program in violation of § 605(a). In Count II, Plaintiff alleges Defendants modified a device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, which is in violation of § 605(e)(4). In Count III, Plaintiff alleges that Defendants illegally intercepted the Program when it was shown by cable television systems and exhibited the Program for purposes of financial gain, in violation of § 553.

The Defendants move to dismiss all three counts, arguing that the claims therein are untimely. Defendants' motions to dismiss are premised on the following logic:

- Other federal courts have held that a two-year statute of limitations is applicable to claims for violations of 47 U.S.C. §§ 553 and 605;

- Plaintiff alleges the interception of the Program took place on May 5, 2007;

- The Complaint in this action was filed on October 27, 2010, more than three years after the alleged interception of the Program, therefore the claims are untimely.

As set forth in Plaintiff's responses to Defendants' motions, there are several serious deficiencies in Defendants' argument.

## A. The Original Complaint was filed on April 30, 2010

First, and foremost, the Original Complaint in this action was filed on April 30, 2010 and not on October 27, 2010. *See* Compl. [DE-1] (Original Complaint filed on April 30, 2010); Am. Compl. [DE-13] (filed December 2, 2010). The only documents filed on October 27, 2010, were Plaintiff's request that the Clerk of Court reissue the summons for "Scott F. Warrick." [DE-10] and the Clerk of Court's reissued summons [DE-11]. The court, therefore, is baffled by Defendants' assertion that "Plaintiff originally filed this civil action on or about October 27, 2010 to a Scott F. Warrick." Warrick's Mem. in Support of Mot. to Dismiss [DE-16] at p. 2.

## B. North Carolina state law supplies the applicable statute of limitations

Second, Defendants inadequately gloss over the applicable law concerning the statute of limitations and overlook relevant North Carolina statutes. Rather than rehash the inaccuracies in Defendants' memoranda, the court finds it more expedient to set forth an accurate statement of the law. Congress did not explicitly provide a statute of limitations for either 47 U.S.C. § 553 or § 605. Generally, where a federal statute fails to provide a statute of limitations, federal courts look to the statute of limitations for the "state statute 'most closely analogous' to the federal Act in need."

5

*North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995)(quoting *Reed v. Transp. Union*, 488 U.S. 319, 323 (1989) and *DelCostello v. Teamsters*, 462 U.S. 151, 158 (1983)). Because of the longstanding nature of this practice, courts "may assume that, in enacting remedial legislation, Congress ordinarily 'intends by its silence that we borrow state law.' " *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355 (1991)(quoting *Agency Holding Corp. v. Malley-Duff Assocs., Inc.*, 483 U.S. 143, 147 (1987)). As such, there is "no doubt about the lender of first resort" for providing statutes of limitation where federal legislation has made no provision: state law. *North Star*, 515 U.S. at 33-34.

Nevertheless, "a closely circumscribed . . . and narrow exception to the general rule" allows for borrowing the limitations period provided by analogous federal law where the arguably relevant state limitations period "would frustrate or interfere with the implementation of national policies or be at odds with the purpose or operation of federal substantive law." *North Star*, 515 U.S. at 34 (internal citations and quotations omitted). Still, federal law remains "a secondary lender," *id.*, and a court must adopt a limitations period from analogous state law unless federal law "clearly provides a closer analogy than available statutes, and . . . the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Lampf*, 501 U.S. at 356 (internal citation and quotations omitted). "In other words, if there is a parallel state statute, there is no reason to explore federal law, unless the state limitations period impedes implementation of national policies, is at odds with the purpose or operation of federal substantive law, or is demanded by the practicalities of litigation." *Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.*, 366 F.3d 217, 221 (3d Cir. 2004).

Accordingly, here, the court must first to look to see if there are any North Carolina state

statutes analogous to the relevant provisions of the FCA. Defendants assert there are none; Plaintiff argues that North Carolina's "Theft of cable television service" statute, N.C. Gen. Stat. § 14-118.5, is analogous to 47 U.S.C. §§ 553 and 605. The court will examine the parties's arguments as to each of the federal statutes supplying the law for Plaintiff's claims.

### 1. Plaintiffs' claims under 47 U.S.C. § 605

Although Plaintiff argues that N.C. Gen. Stat. § 14-118.5 is analogous to both of the statutes referenced in the complaints, with regard to Plaintiff's claims under § 605, the court finds that another state statute is a closer fit: N.C. Gen. Stat. § 1-113.5. Section 605 prohibits both the unauthorized reception of encrypted signals, *see* 47 U.S.C. § 605(a), and the manufacture, assembly, or modification of devices or equipment used to assist end-users in the unauthorized decryption of satellite cable programming or direct-to home satellite services. *See* 47 U.S.C. § 605(e)(4). *See also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 323 (4th Cir. 2008). Similarly, N.C. Gen. Stat. § 14-113.5 makes it unlawful for a person to knowingly "make, distribute, possess, use, or assemble an unlawful telecommunications device or modify, alter, program or reprogram a telecommunications device . . . for commission of a theft of telecommunication service or to acquire or facilitate the acquisition of telecommunications service without the consent of the telecommunication service provider." N.C. Gen. Stat. § 14-113.5(a)(1). *See also DirecTV, Inc. v. Haynes*, 5:03-CV-872-FL(3), 2005 U.S. Dist. LEXIS 46588, at *8 (E.D.N.C. Feb. 11, 2005)(determining that a plaintiff stated a claim under § 14-113.5 where plaintiff alleged that defendant used a "pirate access device" to access plaintiff's satellite television programming without authorization); *DIRECTV, Inc. v. Wilkins*, No. 1:04-CV-71, 2004 WL 2125675, at *1 (M.D.N.C. Sept. 9, 2004). Thus, both § 605 and N.C. Gen. Stat. § 14-113.5 prohibit the use of devices for theft of telecommunication services. Both § 605 and North

Carolina law provide for criminal punishment for violations. *See* 47 U.S.C. § 605(e)(1), (2) and (4); N.C. Gen. Stat. § 14-113.6(a). Both § 605 and North Carolina law provide a civil right of action to aggrieved parties, and allow plaintiffs to recover actual damages, injunctive relief and attorneys fees. *See* 47 U.S.C. § 605(e)(3); N.C. Gen. Stat. § 14-113.6(c). In sum, both § 605 and N.C. Gen. Stat. § 14-113.5 (in conjunction with N.C. Gen. Stat. 14-113.6) prohibit the same behavior, provide for criminal sanctions, and provide for relief for civil plaintiffs. *See DIRECTV, Inc. v. Webb*, 545 F.3d 837, 848-49 (9th Cir. 2008)(observing that a court should look to see if an analogous state statute is similar in purpose and structure to the relevant federal statute); *Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.*, 366 F.3d 217, 224-25 (3d Cir. 2004)(noting that a state cable piracy statute was a "remarkably close analog" to the FCA statute where the state statute prohibited the same behavior, provided criminal sanctions for the same, and provided for similar civil relief). This court, therefore, finds that N.C. Gen. Stat. § 14-113.5 to be parallel in form and substance to 47 U.S.C. § 605.

This court also concludes there is no reason to explore other federal laws for an applicable statute of limitations. There is no suggestion that the application of North Carolina's three-year statute of limitations impedes the implementation of national policies, is at odds with the purpose or operation of federal substantive law, or would conflict with the practicalities of litigation. *See 898 Belmont*, 366 F.3d at 221 ("[I]f there is a parallel state statute, there is no reason to explore federal law, unless the state limitations period impedes implementation of national policies, is at odds with the purpose or operation of federal substantive law, or is demanded by the practicalities of litigation."). Accordingly, for Plaintiff's claims for violations of § 605, this court will use the same statute of limitations applicable to a party's claim for violation of N.C. Gen. Stat. 14-113.5.

8

Under North Carolina law, a three-year statute of limitations applies to claims for violation of N.C. Gen. Stat. § 14-113.5. *See* N.C. Gen. Stat. § 1-52(2)(providing a three-year period within which a party may bring claims "[u]pon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it."). This three-year statute of limitations therefore governs Plaintiff's claims under § 605.

### 2. Plaintiff's claims under 47 U.S.C. § 553

With regard to the claim under § 553, the court turns to the North Carolina statute Plaintiff asserts is analogous: N.C. Gen. Stat. § 14-118.5, entitled "Theft of cable television service. A three-year statute of limitations applies to civil actions for violation of § 14-118.5. *See* N.C. Gen. Stat. § 1-52(2)(providing a three-year period within which a party may bring claims "[u]pon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it.").

To be sure, there is some basis for Plaintiff's assertion that N.C. Gen. Stat. § 14-118.5 is sufficiently analogous to § 553 to supply the relevant statute of limitations. Both § 553 and § 14-118.5 prohibit persons from intercepting or receiving any service transmitted by a cable television system without authorization. *See* 47 U.S.C. § 553(a)(1)("No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be authorized by law."); N.C. Gen. Stat. § 14-118.5(a)(prohibiting the interception or receiving of "any programming or service transmitted by [a] cable [television] system which . . . is not authorized by the cable television system"). Both statutes provide for criminal penalties for violations of the same. *See* 47 U.S.C. § 553(b); 14-118.5(b). Both statutes also provide for civil actions; however, the statutes

9

diverge on the matter of *who* may bring a civil action. Under § 553, "any person aggrieved by any violation of" § 553(a)(1) may bring a civil action. *See* § 553(c)(1). Under the North Carolina statute, however, only a cable television system may institute a civil action. *See* N.C. Gen.Stat. § 14-118.5(c)("Any cable television system may institute a civil action to enjoin and restrain any violation of this section" and may recover civil damages in specified amounts). Thus, the North Carolina statute does not provide a civil action for *any* aggrieved party, only cable television systems.[1] Given this difference in the means of civil enforcement, N.C. Gen. Stat. § 14-118.5 may not be sufficiently analogous such that it should supply the statute of limitations for Plaintiff's § 553 claim.

However, even if this court assumes that N.C. Gen. Stat. § 14-118.5 it is not sufficiently analogous to § 553, and thus, the court should turn to the lender of second resort–an analogous federal statute–Defendants only point to the Copyright Act, 17 U.S.C. § 505, as a potential lender of the statute of limitations. The Copyright Act, however, is itself governed by a three year statute of limitations. 17 U.S.C. § 505(b). *See also Time Warner Cable Nat'l Div. v. Bubacz*, 198 F.Supp.2d 800, 804 (N.D.W.Va. 2001)(concluding that the statute of limitations in the Copyright Act, as opposed to that for a claim of conversion under West Virginia law, applied to plaintiff's claims under §§ 605 and 553).

Although Defendants do not explicitly reference or discuss any other potentially analogous federal statute, they do provide a partial citation to an order from the District Court of the District of Arizona. Defendants neglect, however, to discuss or explain the holding of the Arizona court in any way. This court, on its own accord (and with help from Plaintiff providing a full citation for the case) has read the Arizona court's order. *See In re Cases filed by DirecTV, Inc.*, 344 F.Supp 2d 647

---

[1] There is no indication in this case that Plaintiff is a cable television system.

10

Case 5:10-cv-00179-F Document 39 Filed 07/18/11 Page 10 of 15

(D. Ariz. 2004). The Arizona court determined that the two-year statute of limitations for the federal Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510-2521, applies to claims under 42 U.S.C. § 605. *See In re Cases filed by DirecTV, Inc.*, 344 F.Supp 2d 647 (D. Ariz. 2004). Unfortunately for Defendants, this court does not find the District of Arizona's order to be persuasive when applied to this case. Most importantly, the District of Arizona focused on satellite piracy and claims under § 605, and not the theft of cable services. Accordingly, the District of Arizona never examined whether the provisions of the ECPA are analogous to § 553.

Nevertheless, even if this court were to agree with the proposition that the ECPA is analogous to § 553, the court also is cognizant that the ECPA is very similar to another North Carolina statute, N.C. Gen.Stat. § 15A-287, which is governed by a three-year statute of limitations. *See DIRECTV, Inc. v. Lane*, 4:03-CV-187-FL(2), June 21, 2006, Order (located at docket entry 37) at p. 8 (observing that the wording of § 15A-287 "is nearly identical to that of 18 U.S.C. § 2511, and the similarity between the two statutes has been recognized by North Carolina courts")(citing *Kroh v. Kroh*, 567 S.E.2d 760, 763 (N.C. Ct. App. 2002)); N.C. Gen. Stat. § 1-52(2). Given that state law is the "lender of first resort" for statute of limitations purposes, it follows that this court would look to N.C. Gen. Stat. 15A-287, rather than the ECPA, to supply the statute of limitations for Plaintiff's claim under § 553.[2]

Ultimately, whether N.C. Gen. Stat. §§ 14-118.5 or 15A-287 is considered the state analog to § 553, the result is the same: a three-year statute of limitations applies to Plaintiff's claim under 42 U.S.C. § 553.

---

[2] The court reiterates that Defendants have articulated no reason why the application of the state statute of limitations would impede the implementation of national policies, be at odds with the purpose or operation of federal substantive law, or conflict with the practicalities of litigation.

11

## C. The Amended Complaint relates back to the filing of the Original Complaint

Having determined that Plaintiff's claims are governed by a three-year statute of limitations, the court easily concludes that the Original Complaint was filed within the applicable limitations period. A fair reading of the pleadings in this matter indicates that Plaintiff's claims arose on May 5, 2007; the Original Complaint was filed on April 30, 2010, or within three years of the actions given rise to this suit.

Accordingly, the court turns to the Defendants' third error in their argument: "the operative Complaint in this matter is the Amended Complaint." Scott's Mem. in Support of Mot. to Dismiss [DE-16] at p. 3. The court discerns that in making this assertion, Defendants are in fact arguing that the Amended Complaint does not relate back to the Original Complaint. Defendants are incorrect.

Rule 15(c) of the Federal Rules of Civil Procedure governs whether an amended pleading relates back to the date of an original pleading. It provides, in pertinent part, the following:

> An amendment to a pleading relates back to the date of the original pleading when:
> . . .
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) of serving the summons and complaint, the party to be brought in by amendment:
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1). With regard to Defendant Westside Stories, the Amended Complaint relates back to the Original Complaint under the straightforward terms of Rule 15(c)(1)(B). Again, the *only* change the Amended Complaint makes to the allegations in the Original Complaint is that "Warrick

12

F. Scott" is named as a defendant, as opposed to "Scott F. Warrick." All the allegations in the Amended Complaint with regard to Westside Stories are identical to the allegations in the Original Complaint. Plainly, then, the Amended Complaint "asserts a claim or defense that arose out the conduct, transaction, or occurrence set out . . . in the original pleading." FED. R. CIV. P. 15(c)(1)(B).

Similarly, the Amended Complaint relates back as to Original Complaint with regard to the claims against Defendant Warrick F. Scott. Where, as here, an amended pleading changes the party or the naming of the party against whom a claim is asserted, the amended pleading relates back to the original pleading if

> (1) the claim in the amended complaint arose out of the same transaction that formed the basis of the claim in the original complaint; (2) the party to be brought in received notice of the action such that it will not be prejudiced in maintaining a defense to the claim; and (3) it should have known that it would have originally been named a defendant but for a mistake concerning the identity of the proper party.

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007)(internal quotations omitted). All three requirements have been met in the case at bar.

As this court already has discussed, the first requirement is satisfied; the claims in the Amended Complaint undisputedly arise out of the same transaction that formed the basis for the claims in the Original Complaint.

With regard to the second requirement, the court finds that Defendant Warrick F. Scott received notice of the lawsuit within the time period specified by Rule 4(m) of the Federal Rules of Civil Procedure. That rule provides that a plaintiff must serve a defendant with process within 120 days after a complaint was filed, or within an additional time period specified by the court if a plaintiff shows good cause for the failure to make such service within the original 120 days. *See* FED. R. CIV. P. 4(m). In this case, the court found that Plaintiff demonstrated good cause, and

13

extended the time period for Plaintiff to effect service until January 22, 2011. *See* September 24, 2010, Order [DE-9]. Defendant was personally served on November 13, 2010. *See* Notice of Service [DE-12]. Thereafter, he was served with the Amended Complaint, which corrected his name, on December 8, 2010, by virtue of his attorney accepting service on his behalf. Acceptance of Service [DE-14]. Warrick F. Scott therefore had notice of this action with the applicable time-frame.

Finally, the court finds that Warrick F. Scott knew or should have known that but for Plaintiff's mistake in transposing his name, he would have been named in the Original Complaint. The court agrees with Plaintiff that Warrick F. Scott cannot seriously contend otherwise. The court therefore concludes that the Amended Complaint relates back to the Original Complaint, which was filed within the applicable three-year statute of limitations. Defendants' Motions to Dismiss [DE-15; DE-20] are DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss [DE-15, DE-20] are DENIED.

SO ORDERED. This, the 18th day of July, 2011.

*James C. Fox*
James C. Fox
Senior United States District Judge